# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re: ) | Chapter 13 |
| ) | Case No.  15-02896-dd |
| Sherry Lynne Vaughn, ) | |
| ) | **ORDER DISALLOWING CLAIM** |
| Debtor. ) | |
| ) | |

THIS MATTER comes before the Court on the Objection to Claim of LVNV Funding, LLC ("Objection") filed by Sherry Lynne Vaughn ("Debtor") and the Response to Objection to Claim ("Response") filed by LVNV Funding, LLC ("LVNV" or "Creditor"). For the reasons set forth below, after careful consideration of the applicable law, arguments of counsel, and evidence submitted, the Court sustains the objection and disallows the claim.

## I. Facts and Procedural History

Debtor filed for protection under chapter 13 of the Bankruptcy Code on May 29, 2015.[1] She filed her schedules with her bankruptcy petition. On schedule F, she listed a debt to "Lvnv Funding Llc" at "Po Box 10497 Greenville, SC 29603."[2] The claim is described as "Opened 3/01/10 Factoring Company Account Citibank South Dakota N.A." The amount of the claim is listed as $2,043 owed on account number …6063. Debtor did not mark the claim as contingent, unliquidated or disputed. She filed her chapter 13 reorganization plan that same date, which proposes, *inter alia*, to pay unsecured creditors with allowed claims approximately a ten percent dividend.[3]

---

[1] Dkt. 1

[2] *Id*. p. 47.

[3] Dkt. 2. The plan was confirmed July 20, 2015. The parties acknowledged at the hearing that this issue was being argued for precedential rather than monetary value.

1

On June 23, 2015, a proof of claim was timely filed on behalf of "LVNV Funding, LLC its successors and assigns as assignee of Citibank (South Dakota), N.A" (the "LVNV proof of claim").[4] The proof of claim states that notices should be sent regarding this claim to Resurgent Capital Services at PO Box 10587 Greenville, SC 29603-0587. The debt listed in the proof of claim is $1,766.70 owed on account number …6063. Records attached to the proof of claim reflect that the last payment credited to the account was made on August 8, 2009, and the claim was transferred to LVNV on March 10, 2010.

On June 30, 2015, Debtor filed her Objection to the LVNV proof of claim, arguing that the claim is unenforceable under South Carolina law because enforcement of the debt is barred by South Carolina's three year statute of limitations.[5] The Objection states that Debtor believes the last activity on the account was in 2010. LVNV responded, arguing that by listing the claim on her schedules, Debtor revived the debt under South Carolina law[6] and the statute of limitations does not apply. On August 4, 2015, Debtor amended her schedules, listing the debt in question and a variety of other debts as disputed.

The Court held a hearing on the Objection and Response on August 10, 2015. At the hearing, Debtor argued that the claim should be disallowed because it is not enforceable under state law, is not revived by its inclusion on the schedules, and that permitting revival of the debt by listing it in bankruptcy schedules is contrary to federal bankruptcy law. Creditor responded that South Carolina law requires only a minimal acknowledgement of the debt to revive it, which includes listing the debt on bankruptcy schedules without noting the debt as disputed. Creditor asserts that Debtor is bound by her schedules, thus including the debt without notation of dispute

---

[4] Claim No. 5.

[5] S.C. Code Ann. § 15-3-530(1) (2015).

[6] S.C. Code Ann. § 15-3-120 (2015).

2

is an assertion that the debt is recoverable in the bankruptcy proceeding. At the close of the hearing the Court took the matter under advisement.[7]

## II.    Discussion

At issue is allowance of LVNV's proof of claim. Debtor owed a debt[8] to LVNV's predecessor, that is, she was liable on a claim in its favor. A creditor has a claim for bankruptcy purposes if it has a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Creditors may file a proof of claim. 11 U.S.C. § 501(a). "A claim … proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest … objects." 11 U.S.C. § 502(a). An unsecured, non-priority creditor's right to payment in a reorganization bankruptcy case exists by virtue of it having an allowed claim. *See* Fed. R. Bankr. P. 3021.

Properly filed proofs of claim, *see* Fed. R. Bankr. P. 3001(c), are prima facie evidence of the amount and validity of the claim. Fed. R. Bankr. P. 3001(f). If a party in interest objects to a properly filed proof of claim, the burden of proof shifts to the objecting party to overcome the prima facie presumption by offering evidence sufficient "to demonstrate the existence of a true dispute … [with] probative force equal to the contents of the claim." *Falwell v. Roundup Funding, LLC (In re Falwell)*, 434 B.R. 779, 784 (Bankr. W.D. Va. 2009). This evidence must show that the claim falls within one of the categories of disallowed claims in § 502, such as being "unenforceable against the debtor … under … applicable law." 11 U.S.C. § 502(b)(1). Although

---

[7] The parties also informed the Court at the hearing that a hearing on the same issue with the same attorneys in a different case was scheduled for argument in front of Judge Helen Elizabeth Burris, another bankruptcy judge in this district. Case No. 15-02658-hb, *In re Cunningham*.

[8] 11 U.S.C. § 101(12).

the ultimate burden of proof rests on the creditor to produce evidence and argument establishing the claim, *Falwell*, 434 B.R. at 784, this burden-shifting does not alter any substantive state law creating the claim, absent a prevailing provision in the Bankruptcy Code. *Raleigh v. Ill. Dept. of Rev.*, 530 U.S. 15, 20 (2000) (holding that despite bankruptcy claims allowance burden shifting, Illinois tax law required the ultimate burden of proof to rest on the debtor; no bankruptcy law consideration or Code provision was counter to the state law requirement). The proper analysis of an objection to a proof of claim therefore requires not only consideration of the claimant's rights under state law, but also considering those rights in the context of the Bankruptcy Code to determine if other federal interests require a different result. *Butner v. U.S.*, 440 U.S. 48, 55 (1979).

    *A. Federal Interests at Issue*

State law and non-bankruptcy federal law supply the underpinnings for much of the Bankruptcy Code. Property interests, security interests, and the debtor-creditor relationship turn on non-bankruptcy law. Referencing bankruptcy law prior to the current Code, the United States Supreme Court noted "'the Bankruptcy Act recognizes and enforces the laws of the state affecting dower, exemptions, the validity of mortgages, priority of payment and the like.'" *Butner*, 440 U.S. at 54 n.9 (quoting *Stellwagen v. Clum*, 245 U.S. 506, 613 (1918)). "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* at 55. This extends to security interests. *Id.* No reason exists why a reference to state law and consideration of contrary federal interests would not also extend to considering state law limitations on enforceability of claims to collect a debt.

Distilled to its essence, the question is whether, if South Carolina law revives a stale debt simply by its mention in lists and schedules filed in connection with a bankruptcy petition, some

4

federal principle supplants the state law rule. The short answer to that is affirmative. "The bankruptcy system depends upon the cooperation and honesty of voluntary debtors." *In re Andrews*, 428 B.R. 855, 860 (Bankr. E.D. Ark. 2010). It provides harsh penalties for debtors who do not fully disclose their financial affairs, including denial of discharge or dischargeability if a debtor knowingly fails to disclose transferred assets, 11 U.S.C. §§ 727(a)(4) and 523(a)(10); imposition of criminal penalties for failure to list and disclose property, 18 U.S.C. § 152(7); and adverse applications of collateral estoppel, res judicata, and/or judicial estoppel if causes of action are not listed and fully disclosed, *e. g., Superior Crewboats Inc. v. Primary P&I Underwriters et. al. (In re Superior Crewboats)*, 374 F.3d 330, 335 (5th Cir. 2004) (holding that failure to disclose a $2.5 million prepetition personal injury claim estopped debtors from prosecuting the cause of action). Bankruptcy law favors rules that encourage full disclosure, *Biesek v. Soo Line R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006); it is the "high" and "onerous" price debtors pay in exchange for their discharge, *In re Arana*, 456 B.R. 161, 169 (Bankr. E.D.N.Y. 2011). Indeed, state law on revival of debt discharged in bankruptcy[9] recognizes such policy considerations and supremacy law concerns.

If the debt can be revived as contemplated by Creditor, the revival would occur because Debtor included a stale debt on her schedules. There are several problems with this. First, debtors preparing to file for bankruptcy generally obtain the information in the schedules from their records, public records, and credit reports. Keith M. Lundin & William H. Brown, Chapter 13

---

[9] Noting first that South Carolina case law on revival of debt discharged in bankruptcy has been superseded by § 524(c); a discharged debt under the Bankruptcy Act could only be revived by a new, written promise to pay and not by partial payment or other recognition of the debt. *See Cross v. Stackhouse*, 46 S.E.2d 668, 670 (S.C. 1948) (citing *Lanier v. Tolleson*, 20 S.C. 57 (S.C. 1883); *Pyles v. Bell*, 20 S.C. 365 (S.C. 1884); *Park v. Brooks*, 38 S.C. 300 (S.C. 1893)). This is compared to instances of revival in non-bankruptcy contexts, which is found with lesser showings of acknowledgement. Thus, state law on the subject of claims revival has always shown deference when faced with countervailing federal bankruptcy policy considerations.

5

Bankruptcy, § 29.0 *et. seq.*, Sec. Rev. Apr. 1, 2009, www.Ch13online.com, last accessed August 21, 2015. That information and the debtor's recollection may be incomplete or contain errors; thus the Bankruptcy Rules permit debtors to amend their schedules "as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a). Because of the harsh penalties for omitting debts and assets, being all-inclusive on the schedules is consistent with the Code's principle of honest and full disclosure.

Second, the definition of the term "claim" as including unliquidated, contingent, unmatured, or disputed debts supports the idea of a need for full disclosure. The effect of reviving stale debts simply by including them in the lists would be to permit a creditor who slept on enforcement of its rights to have those rights revived by a debtor seeking relief from debt under federal law and acting consistent with a mandate of full disclosure. Such a creditor would then share in the pool of assets or income the debtor commits to her case, and generally do so at the expense of other creditors. Permitting this result undermines the balance made in the Code where honest debtors receive relief from debts, and creditors of equal rank, that is those who enjoyed similar and current rights to payment, share in the equal distribution of the debtor's assets.

Finally, the Code specifically addresses statutes of limitations and other defenses personal to debtors in § 558, providing

> The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate.

11 U.S.C. § 558. While the trustee is the representative of the bankruptcy estate, § 323(a) and preservation extends to the estate, not the debtor, preserving the statute of limitations against Creditor's revival claim works to benefit the estate and other creditors. Other bankruptcy courts have recognized the right of debtors to raise the statute of limitations defense. *In re Hess*, 404 B.R.

747, 749 (Bankr. S.D.N.Y. 2009); *Simpson v. PRA Receivables Mgmt., LLC (In re Simpson)*, Case No. 08-00344-TOM-13; Adv. Pro. No. 08-00137, 2008 Bankr. LEXIS 2457 (Bankr. N.D. Ala. August 29, 2008); *see also* 5 Collier on Bankruptcy ¶ 558.01[1][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("By contrast, a defense is something that may prevent an unjust claim against the estate. If a defense can be raised by both the trustee and the debtor, the possibility of recovery from the estate is minimized."). As such, federal interests require disallowing the claim and denying revival of the debt.

### B. Debt Revival in South Carolina

If the federal principle is not sufficient in itself to support disallowing LVNV's proof of claim, the claim should also be disallowed because state law does not support revival of the debt. The parties agree that South Carolina law is applicable here. Actions to recover debts in South Carolina must generally be brought within three years of the default on the debt. S.C. Code Ann. § 15-3-530 (2015). This bar only effects the remedy available to a collecting party rather than the underlying right: it does not erase the debt. *Knox v. McCall's Adm'r*, 3 S.C.L. 531, 532 (S.C. Const. Ct. App. 1805) ("[A]lthough it [statutes of limitation] takes away the *remedy*, [it] does not destroy the *right*: for a debt, or duty, once fairly contracted, remains such … notwithstanding the means of its enforcement be removed.") (emphasis original); *In re Mazyck*, 521 B.R. 726, 730 (Bankr. D.S.C. 2014) ("When applicable, the bar of a statute of limitation does not extinguish a creditor's underlying right to payment, but it does cause the remedy – *enforcement* of the right to payment – to be withheld.") (emphasis original).

Because the debt is not extinguished, stale debts could previously be revived at common law and may now statutorily be revived by either partial payment of the debt or "some writing

7

signed by the party to be charged thereby." S.C. Code Ann. § 15-3-120 (2015).[10] This new promise to pay "may be implied as well as expressed, but it must amount to an unqualified admission of a subsisting legal liability and must be established by evidence unambiguous and full." *Black v. White*, 13 S.C. 37, 40 (S.C. 1880). Thus, when a party expressly admits the debt exists, but in doing so also expressly states he will not pay the debt, instead stating the debt will "come in to be paid with my other debts," then the debt is not revived. *Horlbeck v. Hunt*, 26 S.C.L. 197, 201 (S.C. Ct. App. 1841); *see also Hill v. Hill*, 28 S.E. 309, 312 (S.C. 1897) (reviving a stale debt requires "an express promise to pay, or such unqualified and unequivocal admission that the debt is still due, unaccompanied by any expression indicative of an intention not to pay"). However, if a party would similarly note that the statute of limitations has run, but states it intends to pay the debt without including any equivocal language, then the debt is revived. *Lowry v. Dubose*, 18 S.C.L. 425, 426 (S.C. Ct. App. L. &. Equity 1831).[11]

Although modern case law in South Carolina on debt revival is sparse, older cases provide enough guidance for this Court to conclude that Debtor's inclusion of the debt in her schedules did not reset the statute of limitations. As noted *supra*, a mere acknowledgement of a debt as a debt that will be paid in accordance with other debts does not revive the debt. *Horlbeck*, 26 S.C.L. at 201. The notice provided by listing a debt on bankruptcy schedules is notice to a creditor that its

---

[10] The statute was enacted in 1870 and its relevant text has not changed. The main purpose of enacting the statute was to require the new promise to be in writing, as previous common law would sometimes permit revival upon an oral promise. *See Hill v. Hill*, 28 S.E. 309, 312 (S.C. 1897). Thus previous common law cases with regards to revival still apply to the statute. *Id.* (noting that the new statute "does not change the pre-existing law as to what acknowledgement will continue a debt barred… .").

[11] Although the parties did not discuss this at the hearing or in their briefing, the case law indicates that when the debt is merely acknowledged *before* the statute of limitations has passed, the acknowledgement alone will revive the debt. *Cross v. Stackhouse*, 46 S.E.2d 668, 670 (1948). However, if the statute of limitations has *already* passed, then the standard requires the higher "unequivocal" acknowledgement. *Id*. The parties did not dispute at the hearing that the statute of limitations had passed by the time the Debtor listed the debt in her schedules, and that the proper standard was "unqualified and unequivocal."

8

debt will be paid along with the debtor's other debts, in accordance with the filed proof of claim, claims objection process, and other bankruptcy provisions. It does not create a right to payment and does not signify a promise to pay. Listing it on the schedules does not evidence an "undertaking to pay." *Horlbeck*, 26 S.C.L. at 201.

This result is further supported by *Black v. White*, the most analogous of the old cases to the present case. There, the administrator of a probate estate included a time-barred debt he had owed the decedent on an estate inventory. *Black*, 13 S.C. at 39 – 40. The South Carolina Supreme Court directly posed the question whether simply including this debt on an inventory list was sufficient to revive the debt and concluded it was not. *Id*. at 40. The Court noted that the duty of probate administrators is to include all debts and assets on the inventory. *Id*. The probate process would later determine whether "it could be shown, when called upon to account, that they [the debts] were collectible." *Id*. at 41. As such, inclusion of those debts in the inventory "cannot be regarded as an unqualified admission of a subsisting legal liability." *Id*. at 40 – 41.[12]

---

[12] Black v. White involves litigation by the decedent's heirs against the two estate administrators seeking an accounting for two estate assets as a set off against one liability of the decedent. As to the stale debt discussed above, the administrators listed the obligation (a "due bill") in an inventory and estate appraisers later determined collection "doubtful." The heirs sought to have the administrator originally obligated on the "due bill" account for the money rather than directly seeking to collect the money by civil action. In either event, the statute of limitations stood as a bar to enforcement of the debt and there was no property for which to account. Creditor points to *S.C. Tax. Comm. v. Metro. Life Ins. Co.*, 232 S.E.2d 522 (S.C. 1975), as a modern analysis of the revival statute, and argued that the facts in that case demonstrated that the mere inclusion of the debt in the company's assets and liabilities records was sufficient to revive the debt. This neglects other findings in the case. The Tax Commission in that case was attempting to collect unpaid life insurance policies under abandon property statutes. *S.C. Tax Comm.*, 221 S.E.2d at 523. The parties did not dispute that collection was outside the statute of limitations, however, the life insurance company acknowledged that if the policyholders, rather than the taxing authority, attempted to collect on the policies, it would honor those requests. *Id*. The court noted this fact in the opinion, *in addition* to the fact that the debts were reported among the company's assets and liabilities, and stated in its holding that because the life insurance company acknowledged the rights of the policyholders, those rights must also be held by the taxing authority. *Id*. at 523. This lends further support to this Court's conclusion that more than a mere inclusion of a debt on a list is needed to permit revival. *But see Whale Harbor Spa, Inc. v. Wood*, 266 F.2d 953, 954 (5th Cir. 1959) (holding that the general rule is that inclusion of a debt on a corporate balance sheet "will interrupt the running of the statute of limitations … where the obligations in question are listed as liabilities of the corporation.") (citations omitted). Here we will rely on South Carolina law.

The purpose of scheduling a debt in a chapter 13 bankruptcy case is similar. Debtors are directed to fill out the official forms, include all assets and liabilities, and file a list of creditors. Fed. R. Bankr. P. 1007(a). These creditors then receive notice of the bankruptcy and have an opportunity to participate in the reorganization by filing a proof of claim. It is not until the proof of claim is filed that parties have the opportunity to either dispute or acknowledge the debt. The schedules cannot be viewed as a new promise to repay a debt, but are simply a report of all possible obligations.

Creditor makes much of the fact that Debtor did not mark the debt as disputed in her initial schedules. Debtors have the option of indicating on their schedules that claims are disputed, contingent, or unliquidated. While it may be a good practice to identify a claim a debtor believes is unenforceable as disputed, the omission of the mention of a dispute is not an "unequivocal and unqualified" promise to pay. First, as already noted, the Debtor may freely amend her schedules. Additionally, marking a debt as "disputed" in a chapter 13 schedule has no effect on the chapter 13 case, nor, generally, on the debtor or creditor. The creditor must still file a proof of claim which, upon filing, is deemed allowed until an objection is raised. In contrast, in a chapter 9 or 11 case, for which the same form schedules are used, marking a claim as disputed *is* significant because creditors whose debts are *not* disputed do not need to file proofs of claim. Fed. R. Bankr. 3003(a)(1). Finally, the significance of the "contingent" and "unliquidated" options are unrelated to claims treatment in a chapter 13 bankruptcy: however, they do identify the debts included in the chapter 13 eligibility analysis. 11 U.S.C. § 109(e). Omitting checking one of these boxes has no effect on the payment made on the claim in bankruptcy, and therefore is not evidence of a promise to pay.

Creditor also asserts that the schedules, because they are signed under penalty of perjury, are binding promises. Creditor has submitted no case law in support of this proposition and the Court has found none. True, there are instances where admissions on schedules are binding, *E.g., Sovran Bank, N.A. v. Anderson*, 743 F.2d 223, 225 n.1 (4th Cir. 1984) (noting that the market value of real property listed on the schedules, unamended or contested, was binding for the purpose of determining whether there was equity in the property), or at the very least carry evidentiary weight, *Campbell v. Verizon Wireless S-CA (In re Campbell)*, 336 B.R. 430, 436 (B.A.P. 9th Cir. 2005) ("[T]he bankruptcy court may properly consider as admissions or evidence any information contained in debtor's bankruptcy schedules… ."). But, presuming good faith, schedules may always be amended during the course of a bankruptcy case. No court has held otherwise, thus this Court cannot conclude that simply listing a debt on a schedule is evidence of a binding promise sufficient to revive a debt. *Accord Hope v. Quantum3 Group, LLC (In re Seltzer)*, 529 B.R. 385, 393 (Bankr. M.D. Ga. 2015) (collecting cases). Indeed, in most relevant contexts, listing a debt in a bankruptcy case is not a statement of intention to pay, but of a request of discharge of the liability.

### III. Conclusion

Debtor's objection to LVNV's proof of claim is sustained. The claim is disallowed.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**09/02/2015**



_____
David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 09/03/2015